WILCOX ASSOCIATES, Appellant,

v.

FAIRBANKS NORTH STAR BOROUGH, Phil Berrian and Richard Wilhelm, Appellees.

No. 4349.

Supreme Court of Alaska.

Dec. 7, 1979.

**904**

Brett M. Wood, Fairbanks, for appellant.

Terrence H. Thorgaard, Asst. Borough Atty. and J. D. Nordale, Borough Atty., Fairbanks North Star Borough, Fairbanks, for appellees.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

PER CURIAM.

A zoning dispute between Wilcox Associates ("Wilcox"), a partnership, and the Fairbanks North Star Borough has led to this appeal. Wilcox has sued the borough and two of its planners, Phil Berrian and Richard Wilhelm, for damages arising from the borough's refusal to issue zoning permits to Wilcox until ordered to do so by the superior court.

Wilcox planned in the spring of 1975 to subdivide an eight-acre parcel in the borough into lots for "double-wide" mobile homes. While the property was not zoned for mobile homes, "double-wide" mobile homes were acceptable, and a borough zoning administrator so informed Wilcox.[1] Wilcox proceeded with the subdivision, and submitted a plat approved by the borough planning commission on July 1, 1975. Wilcox ultimately spent $190,000.00 on roads, utilities, landscaping, etc.

Under Section 18.44.010 of the Borough Municipal Code of Ordinances, a zoning permit must be obtained before a unit may be installed on a lot. In early 1976, the borough planning department refused to issue zoning permits to Wilcox, on the ground that the "double-wides" were indeed forbidden mobile homes. On March 11, 1976, an assistant borough attorney advised the department that it was legally in error. The department subsequently prepared and introduced before the borough assembly an ordinance, 76–8, expanding the definition of mobile homes to include "double-wides." The ordinance was adopted on April 22.

At the time of adoption, Wilcox had completed his subdivision and had applied for

---

1. The borough ordinance then in effect defined "mobile home" as a dwelling unit designed for transportation as one unit. Since a "double-wide" home is transported in two separate sections to be joined at its lot, it did not fall under the definition of the ordinance.

nineteen zoning permits. Berrian, the borough planning director, had refused to act on the permits pending assembly action on ordinance 76–8. After 76–8 passed, Berrian refused to issue the permits, but he was overruled by the assembly, sitting as a board of adjustment. In order to fill the subdivision, however, Wilcox needed an additional seventeen permits. It applied for them on June 11, 1976, but the application was denied by the planning department and the assembly. Wilcox then sued the borough. The superior court, on November 9, 1977, ordered the permits granted. It ruled that Wilcox's substantial reliance on existing ordinances and official assurances gave it vested rights with respect to the seventeen lots for which permits were sought. The borough did not appeal this decision.

On May 3, 1977, while its appeal of the permit denial was still pending, Wilcox filed the instant action.[2] Based on the denial of the application for the additional seventeen permits, the complaint alleged that the borough, Berrian and Wilhelm

> intentionally, maliciously and wantonly interferred with, disturbed and denied the plaintiff the rights, expectancies and advantages of the lawful utilization of its property as aforesaid as well as the fruits and advantages of the plaintiff's skill, industry and expertise by interferring and harassing the plaintiff in the lawful development of Wilcox Estates Subdivision, interferring and harassing the plaintiff in its existing and prospective contractual relations and by interferring with and in fact denying the plaintiff its vested property rights, both existing and prospective, all without just cause, privilege, and legal right.

Wilcox demanded compensatory and punitive damages. On August 4, 1978, the defendants moved for summary judgment, on the grounds that their affidavits established lack of malice, and that their actions were taken in a quasi-judicial capacity that immunized them from damages absent proof

of malice. The superior court granted the defendants' motion on October 9. We now affirm this action.

Wilcox attacks the superior court's decision on two grounds. It contends that the defendants were not entitled to immunity because their duties in issuing zoning permits were ministerial, so that their motives in denying the permits were irrelevant. Wilcox also argues that even if the defendants' actions were covered by a qualified immunity, that immunity does not extend to malicious actions, and state of mind cannot properly be decided by affidavits in support of a summary judgment motion. We do not agree with either contention.

██ We cannot accept Wilcox's characterizations of the defendants' duties here as "ministerial." We recognize that under some circumstances, approval of permit applications are considered to be nondiscretionary, *see Haslund v. City of Seattle*, 86 Wash.2d 607, 547 P.2d 1221 (1976). Borough planners, however, are not supposed to approve without question every application submitted, but rather are charged with determining that permits conform to the law. Here the seventeen permits applied for by Wilcox were apparently in violation of ordinance 76–8. It was therefore necessary to determine a legal issue as to whether the change in the ordinance was applicable to the application for the additional permits. Routine approval of the application could hardly be described as a "ministerial" act. As pointed out by Justice Utter in *Haslund v. City of Seattle*, 547 P.2d at 1225 n. 2, a majority of the federal decisions involving government tort liability for negligence in granting permits and licenses have held the decisions to be discretionary functions. *See United States v. Morrell*, 331 F.2d 498 (10th Cir. 1964), *cert. denied sub nom., Chournos v. United States*, 379 U.S. 879, 85 S.Ct. 146, 13 L.Ed.2d 86 (1964); *Lawrence v. United States*, 381 F.2d 989 (9th Cir. 1967); *Coastwise Packet Co. v. United States*, 398 F.2d 77 (1st Cir. 1968),

---

**2.** Wilcox's action was probably filed at this time in order to avoid the possible effect of AS 09.65.070(d)(3), which became operative on May 18, 1977, and which bars suit against mu-

nicipalities "based upon the grant, issuance, refusal, suspension, delay or denial of a license, permit, appeal, approval, exception, variance, or other entitlement, or a rezoning."

*cert. denied*, 393 U.S. 937, 89 S.Ct. 300, 21 L.Ed.2d 274 (1968); *Lemmons v. United States*, 496 F.2d 864, 204 Ct.Cl. 404 (1974); *but see Pennsylvania R. R. v. United States*, 124 F.Supp. 52 (D.N.J.1954).[3]

We also find that the defendants here met their burden of proof of lack of malice, so that summary judgment was properly granted. Summary judgment is generally inappropriate where a party's state of mind is at issue.[4] But it may be proper if the affidavits in regard to state of mind are substantially uncontested.[5] *See generally* 10 Wright and Miller, Federal Practice and Procedure, § 2730 (1973). Here, Wilcox filed no affidavits or other evidence to counter defendants' denials of bad faith. More importantly, we believe that the borough assembly, which affirmed the planning department's denial of the permits at issue here, had proved its lack of malice toward Wilcox by earlier overruling the department and granting Wilcox the nineteen permits for which it had applied prior to the adoption of ordinance 76–8. Wilcox's unsupported charges of bad faith

3. This appeal raises another question, which Wilcox did not brief and which we do not decide: whether former AS 09.65.070(a), in effect when this suit was filed, abolished municipal immunity with regard to discretionary actions like those involved here. AS 09.65.070(a) read, prior to May 18, 1977:

> An action may be maintained against an incorporated borough, city, or other public corporation of like character in its corporate character and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of the unit of local government.

In *City of Fairbanks v. Schaible*, 375 P.2d 201 (Alaska 1962), we held that a municipality had no immunity from tort liability for an act or omission in the exercise of either governmental or proprietary functions. In *State v. Jennings*, 555 P.2d 248, 251 (Alaska 1976), we stated that there was no municipal immunity in Alaska. The holdings of those cases, however, did not involve discretionary adjudicative or quasi-judicial functions. We note that Washington, which has also generally abolished municipal immunity (RCW 4.96.010: municipal corporations "shall be liable for damages arising out of their tortious conduct . . . to the same extent as if they were a private person or corporation . . ."), retains qualified immunity for discretionary acts. *Evangelical United Brethren Church of Adna v. State*, 67 Wash.2d

by the defendants without indicating any reasons for such motive do not warrant putting the defendants to the time and expense of a trial.

AFFIRMED.

246, 407 P.2d 440 (1965) (en banc). We also note that the Alaska legislature, in its 1977 enactment of AS 09.65.070(d), conferred broad immunity upon municipalities in connection with many governmental functions, including land use regulation. *See* note 2 *supra*.

4. *E. g., Poller v. CBS, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458, 464 (1962) (summary judgment should be used sparingly in complex antitrust cases "where motive and intent play leading roles"); *Croley v. Matson Navigation Co.*, 434 F.2d 73, 77 (5th Cir. 1970):

> The court should be cautious in granting a motion for summary judgment when [the] resolution of the dispositive issue requires a determination of state of mind. Much depends on the credibility of the witnesses testifying as to their own states of mind. In these circumstances, the jury should be given an opportunity to observe the demeanor, during direct and cross-examination, of the witnesses whose [state] of mind [is] at issue.

5. *E. g., Moran v. Bench*, 353 F.2d 193 (1st Cir. 1965), *cert. denied*, 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359 (1966); *McKinney v. DeBord*, 324 F.Supp. 928, 930–31 (E.D.Cal.1970) ("summary judgment is proper when the state of mind of defendants is dispositive of the claim and is substantially uncontested").